IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

**NIKKITA MONTOYA and ELIZABETH MONTOYA**,

    Plaintiffs,

    v.                                                    Civ. No. 09-1068 BB/RLP

**NEW MEXICO DEPARTMENT OF PUBLIC
SAFETY, FARON SEGOTTA** in his capacity as Chief
of the New Mexico State Police Division of the
Department of Public Safety, and **JOHN LYTLE**, in his
capacity as a New Mexico State Police Officer,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant John Lytle's Motion for Summary Judgment (Doc. 28). In his motion, Defendant Lytle seeks dismissal of the 42 U.S.C. § 1983 claims Plaintiffs have brought against him[1] in their First Amended Complaint for Civil Rights Violations and Damages ("Complaint") (Doc. 18). The other Defendants are not parties to this motion. Having reviewed the submissions of the parties and the relevant law, the Court finds that Defendant Lytle is not entitled to qualified immunity and the motion for summary judgment should be DENIED.

---

[1] Defendant Lytle claims that Plaintiffs' 42 U.S.C. § 1983 claims only apply to him, as the other parties are not liable under the "respondeat superior" doctrine of supervisor liability. Doc. 28, f.n.1. However, supervisors may be held liable under § 1983 in certain circumstances. *See*, *e.g.*, *Dodds v. Richardson,* 614 F.3d 1185, 1195 (10th Cir. 2010) (supervisors may be liable if they directly participated in the alleged violation, exercised control or direction over the violator, or failed to supervise the violator). Here, Plaintiffs allege that Defendant Segotta and the New Mexico Department of Public Safety "failed to properly train and supervise" Defendant Lytle. Doc 18, ¶ 18. They have properly pleaded a § 1983 supervisory-liability claim against Defendant Segotta and the Department. As those defendants were not parties to this motion, Plaintiffs' claims against them also remain at issue.

**Jurisdiction**

The Court has original, subject matter jurisdiction over the instant suit pursuant to 28 U.S.C. § 1331 or "federal question jurisdiction." However, the Court does not have jurisdiction over Plaintiff Elizabeth Monotya, as she does not have standing to bring this suit. See *The Wilderness Society v. Kane County, Utah*, 581 F.3d 1198, 1209 (10th Cir. 2009) ("absent a plaintiff with constitutional standing, federal courts lack jurisdiction").

Defendant Lytle has not challenged Elizabeth Montoya's standing, but "any party, including the court sua sponte, can raise the issue of standing for the first time at any stage of the litigation." *New England Health Care Employees Pension Fund v. Woodruff*, 512 F.3d 1283, 1288 (10th Cir. 2008). "The federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of the jurisdictional doctrines." *U.S. v. Hays*, 515 U.S. 737, 742 (1995) (internal quotations omitted). "The question of standing is not subject to waiver." *Id*.

"To show that [s]he has Article III standing, a plaintiff must demonstrate three elements: injury in fact, traceability, and redressability." *Southern Utah Wilderness Alliance v. Office of Surface Mining Reclamation and Enforcement*, 620 F.3d 1227, 1233 (10th Cir. 2010). In this case, Elizabeth Montoya has failed to meet the "injury in fact" requirement of standing. "To demonstrate an injury in fact, a plaintiff must show [s]he has suffered an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id*. (internal quotations omitted). Elizabeth Montoya has not established her 'legally protected interest' implicated by Defendant Lytle's actions; rather, she claims damages as a result of the violations of *her daughter's* legally protected interests. See Doc 18, ¶ 14 (outlining the alleged violations of Nikkita Montoya's constitutional rights). A plaintiff does not acquire Article III standing by asserting the rights of others. *RMA Ventures California v.*

*SunAmerica Life Ins. Co.,* 576 F.3d 1070, 1073 (10th Cir. 2010); Fed.R.Civ.P. 17(a) (establishing that only the real party in interest is permitted to bring an action in federal court). Therefore, Elizabeth Montoya does not have standing in the instant case, and the Court will dismiss her as a plaintiff.[2]

### Summary of Relevant Facts

On October 4, 2006, Plaintiff was arrested pursuant to a facially-valid arrest warrant. Defendant Lytle wrote the affidavit upon which the warrant issued. Also on October 4, 2006, a petition was filed alleging that Plaintiff was a delinquent child who had committed the act of conspiracy to traffic a controlled substance. She was arrested and held in custody until October 5, 2006. On October 13, 2006, the State of New Mexico dismissed the delinquency petition.

On October 5, 2009, Plaintiff and her mother filed a complaint in state court raising claims of federal civil-rights violations as well as state-law claims brought pursuant to the New Mexico Tort Claims Act (NMSA §§ 41-4-1 to -29). Defendants removed the case to this Court and filed a motion for partial summary judgment seeking dismissal of all the state-law claims. Doc. 8. The Court granted Defendants' motion for partial summary judgment and dismissed Plaintiffs' state law claims. Doc. 27.

Only Plaintiff Nikkita Montoya's 42 U.S.C. § 1983 claims remain before the Court. Defendant Lytle argues that he is immune from those claims pursuant to the doctrine of qualified immunity. He also argues that he is entitled to summary judgment because "there is no genuine issue as to any material fact regarding Plaintiff's 42 U.S.C. § 1983 claims." Doc. 28, p. 1.

---

[2] If Elizabeth Montoya does not agree with the Court's finding that she lacks standing to bring the instant case, she has 15 days from the filing of this opinion to show cause why she should not be dismissed as a plaintiff.

**Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Medina v. Income Support Div.*, 413 F.3d 1131, 1133 (10th Cir. 2005) (quoting Fed. R. Civ. P. 56(c)). In response, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.* v. *Zenith*, 475 U.S. 574, 587-88 (1986). To avoid summary judgment, the nonmoving party may not rest upon the mere allegations in the pleadings but must show, at a minimum, an inference of the existence of each essential element of the case. *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1016-17 (10th Cir. 2001) (citing *Hulsey v. K-Mart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)). When viewing the evidence, the Court must draw reasonable inferences in favor of the non-moving party. *Matsushita*, 475 U.S. at 587.

**Discussion**

**I. Qualified Immunity**

Defendant Lytle argues that he is harbored from liability by the doctrine of qualified immunity.  Doc. 28, p.1. In § 1983 cases, qualified immunity shields government officials from damages liability "for the performance of their discretionary functions when 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1978)).  "The contours of the [violated] right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 83 U.S. 635, 640 (1987).   The Tenth Circuit requires "a Supreme Court or other Tenth Circuit decision on point, or the clearly established weight of authority from other circuits must

4

have found the law to be as the plaintiff maintains" in order for a law to be "clearly established" for purposes of precluding qualified immunity. *Murrell v. School Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1251 (10th Cir. 1999).

When considering the merits of qualified immunity at the "summary judgment stage . . . it is generally the district court's exclusive job to determine which facts a jury could reasonably find from the evidence presented to it by the litigants." *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010) (quoting *Johnson v. Jones*, 515 U.S. 304, 313 (1995)). District courts then examine those facts "in the light most favorable to the plaintiff, to determine whether they amount to a violation of a clearly-established right." *Dodds v. Richardson,* 614 F.3d 1185, 1191 (10th Cir. 2010); (quoting *Walker v. City of Orem*, 451 F.3d 1139, 1155 (10th Cir.2006)). "In the qualified-immunity analysis, the Court must take the facts as the Plaintiffs assert them as true, unless blatantly contradicted by the record." *Kerns v. Board of Com'rs of Bernalillo County*, 707 F.Supp.2d 1190, 1273 (D.N.M. 2010).

Once a defendant asserts qualified immunity from a § 1983 suit, the plaintiff bears the burden of disproving the official's entitlement to qualified immunity. *Dodds,* 614 F.3d at 1191. "Although the plaintiff bears this burden, the evidence is reviewed in the light most favorable to the plaintiff when, as here, the defendant seeks summary judgment on the ground of qualified immunity." *Fletcher v. Burkhalter*, 605 F.3d 1091, 1095 (10th Cir. 2010). "To overcome the qualified immunity defense, the plaintiff must identify a clearly established statutory or constitutional right of which a reasonable person would have known, and then allege facts to show that the defendant's conduct violated that right." *Herring v. Keenan*, 218 F.3d 1171, 1175 (10th Cir. 2000). Courts may address those two prongs in either order. *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009) (citing *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009)).

### A. Clearly Established Right

Here, Plaintiff alleges that Defendant Lytle "violated her civil rights under the Fourth Amendment of the Constitution . . . in that he caused [her] to be arrested by knowingly or negligently filing a false affidavit for her arrest." Doc. 18, ¶ 14. Plaintiff also claims that Defendant Lytle violated her Fourteenth Amendment due process rights when he submitted the affidavit in question. *Id*. She states that Defendant Lytle "knew that Nikkita Montoya was not the individual whom he had investigated," and he "maliciously or negligently caused her false arrest and incarceration." *Id*. She does not allege that the arrest was executed unlawfully, nor does she challenge the facial validity of the warrant. Doc 33, ¶ 5.

In the Tenth Circuit, the law is clearly established that "an officer would violate a plaintiff's Fourth and Fourteenth Amendment rights by knowingly or recklessly making a false statement in an affidavit in support of an arrest . . . warrant, if the false statement were material to the finding of probable cause." *Bruning v. Pixler*, 949 F.2d 352, 357 (10th Cir. 1991) (*citing Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)). Omitting information that would vitiate probable cause in a warrant would have the same effect. *Id*.

"The initial [arrest] is governed by the Fourth Amendment, but at some point after arrest, and certainly by the time of trial, constitutional analysis shifts to the Due Process Clause." *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir.2008) (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1285-86 (10th Cir. 2004)). Specifically, a plaintiff who is "imprisoned pursuant to legal but wrongful process has a claim under the procedural component of the Fourteenth Amendment's Due Process Clause analogous to a tort claim for malicious prosecution." *Mondragon*, 519 F.3d at 1082. That due process claim for malicious prosecution "arises only once the original action, whatever form it has taken, has been terminated in favor of the plaintiff." *Id*. at 1083 (internal citations omitted).

6

In this case, Plaintiff alleges that she was imprisoned pursuant to a facially valid warrant that issued from Defendant Lytle's wrongful affidavit. Doc. 18, ¶ 14. The matter was terminated in her favor when the District Attorney's office dismissed the charges. *See Wilkins v. DeReyes*, 528 F.3d 790, 802 (10th Cir. 2008) (formal abandonment of the proceedings by public prosecutor terminated the matter in favor of plaintiffs). Thus, Plaintiff has cleared the first hurdle in disproving Defendant Lytle's claim of qualified immunity by identifying her clearly established Fourteenth Amendment procedural due process rights implicated in this case.

B. Defendant Lytle's Alleged Conduct

Now, the Court must determine whether Plaintiff has properly alleged that Defendant Lytle's conduct violated her clearly established Fourteenth Amendment rights. *Dodds,* 614 F.3d at 1191. Plaintiff asserts that Defendant Lytle knowingly included false information in his affidavit in support of the warrant for her arrest. Doc. 1, ¶¶ 14, 21. Specifically, she states that he accused her of participating in a drug trafficking conspiracy, though "he knew or should have known that [she] was not the individual whom he had investigated" in the conspiracy. Doc. 1, ¶ 12. The critical inquiry, then, is whether Defendant Lytle was knowingly or recklessly misleading about the existence of probable cause to arrest Nikkita Montoya. *See Bruning*, 949 F.2d at 357 (knowingly or recklessly writing a misleading affidavit for an arrest warrant violates the Fourth and Fourteenth Amendments).

1. The Investigation

While investigating drug trafficking, Defendant Lytle states that a confidential informant ("CI") introduced him to a young woman named "Nokia" (phonetic spelling). Doc. 28, ¶ 10. The CI identified her "as someone who could help him buy cocaine." *Id.* Over the course of his investigations, Defendant Lytle met with the woman he knew as "Nokia" for "a total of approximately 15-20 minutes on two or three separate occasions." *Id.*, ¶ 13. On June 26, 2006,

7

"Nokia" guided him to a trailer park where she said he could buy powder cocaine. *Id*. ¶ 11. At the trailer park, "Nokia" introduced Defendant Lytle to a man and woman who then sold him powder cocaine. *Id*. The two sellers were later identified as Rashard Felder and Desiree Romero.

The woman known as "Nokia" was to be charged with conspiracy to traffic cocaine, so Defendant Lytle attempted to uncover her true identity. *Id*. ¶ 16. The CI told him that "Nokia" worked at the Sonic restaurant in Las Vegas, New Mexico. *Id*. Defendant Lytle drove to that restaurant, where he observed an employee whose name tag read "Nikkita." *Id*. Defendant Lytle thought that person "had a similar body type, facial color, hair color, hair style and eyeliner as the young female he previously had met, and she also had the same distinctive piercing in the middle of her chin." *Id*. "Through inquiries," Defendant Lytle learned that the employee's full name was Nikkita Montoya, and that she "had a previous juvenile charge" for possession of marijuana. *Id*.

2. The Affidavit

More than three months after he met with "Nokia", on October 2nd, 2006, Defendant Lytle wrote an affidavit for Plaintiff's arrest for participating in the drug trafficking conspiracy. The relevant portion of that affidavit reads:

> On Monday June 26, 2006, New Mexico State Police Narcotics Agent John Lytle was working in an undercover capacity in the city of Las Vegas, San Miguel County, New Mexico. *Agent Lytle met with an individual later identified as Nikkita Montoya*. Agent Lytle informed Nikkita Montoya he was interested in purchasing cocaine. Nikkita Montoya entered the undercover vehicle and provided verbal directions to [trailer park address]. Nikkita Montoya then introduced Agent Lytle to Desiree Romero and Rashard Felder. Agent Lytle then purchased . . . cocaine from Desiree Romero.
> Doc. 28-1, p.7 (emphasis added).

The arrest warrant was issued based on Defendant Lytle's affidavit, and Plaintiff was arrested and charged with conspiracy to commit drug trafficking.

Plaintiff alleges that Defendant Lytle's affidavit contained recklessly false information and omitted information that would have vitiated probable cause for her arrest. Defendant Lytle avers that when he "prepared and executed the [a]ffidavit . . . and continuing through today, [he] believed that the young female who had directed and introduced him to Rashard on June 26, 2006 for the purpose of purchasing cocaine was, in fact, Plaintiff Nikkita Montoya." Doc. 28, ¶ 18. However, it is the *affidavit* in support of the arrest warrant that Plaintiff is challenging here; Defendant Lytle's subjective belief that Nikkita is "Nokia" is only relevant to the extent that it was expressed in the affidavit and only if that belief were *reasonable*. See *Ornelas v. U.S.*, 517 U.S. 690, 696 (1996) (the existence of probable cause to arrest is analyzed "from the standpoint of an objectively reasonable police officer"); *cf., Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (holding that "law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity"); *Sherouse v. Ratchner*, 573 F.3d 1055, 1059 (10th Cir. 2009) (denying plaintiff's motion for summary judgment and finding it was reasonable for defendant officers to believe they had probable cause to arrest plaintiff where plaintiff did not deny she resembled the robber, plaintiff was near the robbery, and witnesses suggested plaintiff might have been the robber).

The person Defendant Lytle met on June 26, 2006 was called, phonetically, Nokia. Doc. 28, ¶ 10. However, he wrote in his affidavit only that he met "with an individual later identified as Nikkita Montoya." Doc. 28-1, p.7. He did not include the fact that he was introduced to a woman named "Nokia," nor did he include information as to how or why he believed "Nokia" was in fact Nikkita Monotya. Subsequently, in his moving papers for this case, Defendant Lytle explained that he

> learned from a CI that Nokia worked at the Sonic in Las Vegas, and he drove there to observe her. [He] observed a young female employee working inside the Sonic who appeared to be the person who had introduced him to Rashard on June 26, 2006. The young

9

> female wore a name tag stating "Nikkita" and had a similar body
> type, facial color, hair color, hair style and eyeliner as the young
> female he previously had met [sic], and she also had the same
> distinctive piercing in the middle of her chin.  Through inquiries,
> [he] learned that the employee's name was Nikkita Montoya and
> that . . . Nikkita Montoya had been arrested for possession of
> marijuana in the summer of 2006, and placed on juvenile probation.
> Doc. 28, ¶¶ 16-17.

So, Defendant Lytle appears to be stating that his belief that Nikkita was "Nokia" was reasonable because a CI told him that Nokia worked at Sonic, Nikkita had a similar physical appearance to "Nokia," and Nikkita had a juvenile charge for possession of marijuana.  *See* Doc. 28, ¶¶ 16-17.  If he had other reasons for believing Nikkita was "Nokia," he did not explain them in the affidavit or in his moving papers.

Plaintiff disputes Defendant Lytle's statement that she resembles "the young female" who helped him buy cocaine from Rashard and Romero.  Doc. 33, ¶ 4. She provides her own and Desiree Romero's affidavits in support of that claim.  Doc. 33-2.  Ms. Romero, the individual who sold cocaine to Defendant Lytle in the trailer park on June 26, 2006, states that Plaintiff "has never been to my house; she did not introduce me to [Defendant] Lytle..." Doc. 33-2, p. 1.  She goes on to state that "the person who brought [Defendant] Lytle to my house is named Nokia Crespin; Nokia Crespin does not resemble or look alike [sic] Nikkita Montoya in any respect or way."  Doc. 33-2, p. 1-2.  Similarly, Plaintiff asserts that she and "Nokia Crespin have no similarity of appearance . . . [nor do they] have similar piercings." Doc 33, p. 4.

Defendant Lytle continues to claim that Nakia Crespin[3] and Plaintiff do look alike.  He provides the affidavit of Ray Roybal, Supervisor of Motor Vehicle Services of the State of New

---

[3] Desiree Romero and Plaintiff spell Ms. Crespin's first name "Nokia," while Defendant Lytle and Mr. Roybal spell it "Nakia."  The parties do not address the discrepancy in spelling. The Court assumes, therefore, that the parties agree that Nokia Crepsin and Nakia Crespin are the same person.  The Court does not decide whether Ms. Crespin or Ms. Nikkita Monotya was the individual named "Nokia" with whom Defendant Lytle met on June 26, 2006.

Mexico, as evidence that Nakia Crespin and Plaintiff physically resemble each other.  Doc. 38-2. Mr. Roybal states that the Motor Vehicle Division records "show that Nikkita Montoya was born on September 11, 1988 and is a female 504 in height, 140 pounds, with brown eyes.  The same official records show that Nakia Crespin was born July 9, 1987 and is a female, 507 in height, 157 pounds, with brown eyes."  *Id*. at ¶ 8.  He also states that "the photographs show that on the dates the 2006 photographs were taken, Ms. Montoya and Ms. Crespin each was wearing a small round piercing in the upper portion of her chin, just beneath the lower lip."  Doc. 38-2, ¶ 7.  Nakia's picture was taken May 16, and Plaintiff's was taken nearly six months later on November 1.  Doc. 38-2, ¶¶ 5-6. The women's hair color, skin color, and ethnicity are not mentioned in Mr. Roybal's affidavit or in the license information he attached.  Doc. 38-2.

      The driver's license photos that Mr. Roybal appended to his affidavit are black and white computer print-outs, so it is difficult to draw hard and fast conclusions about the women's appearances from them.  However, it does appear that Plaintiff's hair is lighter in color and styled differently than Nakia's.  Doc. 38-2, p. 3, 5.  Also, the three photos of Nakia show her with a different face shape in each–ostensibly distorted from printing a photograph on a regular copy machine or printer.  Doc. 38-2, p. 5.  Mr. Roybal did not address the distortion evident in the printed photos, so the Court cannot conclude which of the three photos of Nakia most closely represents her actual face shape.  The photos of both women show shadowing on their chins just below their lips.  Doc. 38-2, p. 3, 5.  In one of the three photos of Nakia, the shadowing does resemble a bead or piercing.  Doc. 38-2, p. 5.  The other two pictures of Nakia do not show a chin piercing, and the shadow is blurred in the only photo of Plaintiff.  Doc. 38-2, p. 3, 5.  Moreover, Plaintiff specifically denies that she has the same piercing as Nakia.  Doc 33, p. 4.

      Defendant Lytle analogizes the facts of this case to those where the arresting officers were mistaken as to the identity of the person to be arrested.  Doc. 18, p. 14-16.  Specifically, he cites

*Hill v. California*, 401 U.S. 797 (1971) as support for his argument that his mistaken belief that Plaintiff was "Nokia" was reasonable and that he is therefore entitled to qualified immunity. *Hill* concerned a warrantless arrest and search incident to that arrest; Mr. Hill challenged the arrest of another man in his apartment and attempted to suppress the evidence obtained pursuant to the search incident to the arrest. 401 U.S. at 799.

  *Hill* is distinguishable from the instant case for several reasons. First, all parties agreed that probable cause existed to arrest Mr. Hill. *Id*. Plaintiff, however, specifically denies that probable cause existed for her arrest. Second, Mr. Hill was challenging the warrantless arrest of an individual the arresting officers mistakenly believed to be him; whereas, Plaintiff here is not challenging the arrest itself but rather Defendant Lytle's affidavit in support of the arrest warrant. Third, and most compelling, the arresting officers in *Hill* had never seen Mr. Hill in person, but Defendant Lytle had met with "Nokia" two or three times. *Id*.; Doc. 18, p. 11. Apparently, the man who was in Mr. Hill's apartment met the physical description of Mr. Hill in his police records. *Id*. In this case, however, Plaintiff is 3 inches shorter and 17 pounds lighter than Nakia Crespin. Doc. 38-2, ¶ 8. The driver's license photos of the two women show that Plaintiff has lighter hair than Nakia Crespin. Doc. 38-2, p. 3, 5. The only physical resemblance that Defendant Lytle has shown is that the women both have brown eyes. Doc. 38-2, ¶ 8. If Defendant Lytle had made a warrantless arrest of Plaintiff based on her resemblance to the physical information found in records of Nakia Crespin, *Hill* would be on point. However, Defendant Lytle saw both Plaintiff and "Nokia" in person, and "Nokia" was one target of an intense undercover investigation of drug trafficking. In other words, he had the opportunity to observe "Nokia" and more knowledge upon which to base a finding of probable cause to arrest than did the arresting officers in *Hill*. *Hill* is neither on point nor informative.

The Court must consider all of the evidence above in the light most favorable to Plaintiff. *Fletcher*, 605 F.3d at 1095. Defendant Lytle claims that Plaintiff looks like the woman who took him to the trailer park on June 26, 2006, so it was reasonable for him to write in his affidavit in support of the arrest warrant that the individual in question was later identified as Nikkita Montoya and nothing more. *See* Doc. 28, ¶ 16. Plaintiff, in contrast, asserts that she does not look like Nakia Crespin, the person she believes participated in the drug conspiracy, and so it was unreasonable for Defendant Lytle to believe Plaintiff was the person he investigated. All Defendant Lytle has shown is that Nakia and Plaintiff were both teenaged girls with brown eyes of a somewhat similar (but not the same) height and weight. Evidence as to all other physical characteristics is contradictory. Plaintiff has thereby established that there is a material question of fact as to whether she resembles the woman who was the subject of Defendant Lytle's investigation.

Thus, the Court cannot assume that it was reasonable for Defendant Lytle to write that the conspirator was later identified as Nikkita Montoya and omit all other information about the manner in which he arrived at that identification. Plaintiff has presented facts that, if true, would be sufficient for a jury to find it was unreasonable for Defendant Lytle to believe and write in his affidavit that she was "Nokia." *See Lewis*, 604 F.3d at 1225 (at summary judgment stage, district court must parse out which facts a jury could reasonably find from the information provided by the litigants); *Johnson*, 515 U.S. at 313 (same). A jury could find that the omitted information as to the women's appearance and name discrepancy would have vitiated probable cause, as it would have indicated to the signing magistrate that Nikkita Montoya was not necessarily the individual who met with Defendant Lytle on June 26, 2006. *Compare Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996) (omissions in affidavit for arrest warrant would *not* have altered probable cause finding where affidavit *did* contain substantiated information regarding numerous

13

similarities of relevant facts in two witnesses' statements), *with Melessa v. Randall*, 121 Fed.Appx. 803, 807-808 (10th Cir. 2005) (omitted facts that the outstanding bench warrant pertained to a gun-related incident, not the incident at hand, and the person 'tampered with' was not a witness in the case *would have* vitiated probable cause to arrest in witnessing tampering case) (unreported case).  Unlike the affidavit at issue in *Taylo*r, Defendant Lytle's warrant does not include any specific facts that link Nikkita to the June 26, 2006 drug purchase.  *See* Doc. 28-1, p.7.  He did not, for example, discuss all of the physical similarities he believed there to be between "Nokia" and Plaintiff.  *See* Doc. 28-1, p.7; Doc. 28, ¶ 16.

Based on the foregoing information, the Court finds for purposes of this motion that it was unreasonable for Defendant Lytle to believe Plaintiff was "Nokia" and to omit information about her name and physical appearance from his affidavit.  Making reasonable inferences in the light most favorable to Plaintiffs, the Court finds that a reasonable official in Defendant Lytle's position would have or should have known that the information he had about "Nokia's" identity was not sufficient, by itself, to establish probable cause for arresting Nikkita Montoya.  *See Dodds,* 614 F.3d at 1191 (district courts must hold facts in the light most favorable to the plaintiffs when evaluating the merits of a qualified immunity defense on motion for summary judgment); *Bruning*, 949 F.2d at 357 (officers violate constitutional rights by knowingly or recklessly obscuring a material fact in affidavits for arrest warrants).  Under this view of the facts, his affidavit violated Plaintiff's Fourteenth Amendment rights by misleading the magistrate as to the probable cause to arrest her.  Therefore, Defendant Lytle is not entitled to the protection of qualified immunity.

**II. Summary Judgment**

Finding that Defendant Lytle is not entitled to qualified immunity, the Court turns to his claim that he is entitled to summary judgment as a matter of law.  This suit concerns Plaintiff's civil rights claims arising from her imprisonment pursuant to legal but wrongful process; such a

claim is analogous to and analyzed as a malicious prosecution claim. *Mondragon*, 519 F.3d at 1082. In order for Plaintiff's claim to survive Defendant Lytle's motion for summary judgment, she "must assert facts meeting the elements of a § 1983 malicious prosecution claim." *Wilkins*, 528 F.3d at 797. Also, she must present "specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587-88.

"The common law elements of malicious prosecution are the 'starting point' for [courts'] analysis of § 1983 malicious prosecution claims." *Wilkins*, 528 F.3d at 797 (citing *Pierce v. Gilchrist*, 359 F.3d 1279, 1285-86 (10th Cir.2004)). In the Tenth Circuit, "a § 1983 malicious prosecution claim includes the following elements: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Id*. at 799.

Elements one and two have been established. See discussion *supra*. The Court will begin with element three: the existence of probable cause to arrest Plaintiff. The Fourth Amendment establishes that "no Warrants shall issue, but upon probable cause. . ." U.S. Const. Amend. IV. The requisite probable cause exists where the facts and circumstances within the affiant's knowledge and of which the affiant had reasonably trustworthy information are sufficient, in themselves, to support a reasonably cautious person's belief that an offense has been or is being committed. *Bowling v. Rector*, 584 F.3d 956, 969 (10th Cir. 2009) (citing *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949)). "The substance of all the definitions of probable cause is a *reasonable ground for belief of guilt*." *Id*. (quoting *Brinegar*, 338 U.S. at 175) (emphasis added).

The Tenth Circuit has "long recognized that it is a jury question in a civil rights suit whether an officer had probable cause to arrest." *DeLoach v. Bevers*, 922 F.2d 618, 623 (10th Cir. 1990). "Whether a situation indicates probable cause for arrest depends on an officer's subjective

understanding of the facts...." *Sherouse*, 573 F.3d at 1059.  If the officer is mistaken about the facts justifying an arrest, that mistaken belief "does not negate the legitimacy of a probable cause determination" as long as it was "*reasonable*."  *Id*. (emphasis added).  As discussed in detail above, Plaintiff has presented sufficient information to show there is a genuine issue of fact as to whether Defendant Lytle was reasonable in his belief that there was probable cause to arrest her.  She has thereby established the third element of her malicious prosecution claim.

Next the Court must determine whether Defendant Lytle could be found to have acted with malice, the fourth element of a malicious prosecution claim.  In the context of a false or misleading affidavit for an arrest warrant, a finding of defendant's malice "requires intentional or reckless disregard of the truth."  *Fletcher*, 605 F.3d at 1095.  "A factfinder may infer reckless disregard from circumstances evincing obvious reasons to doubt the veracity of the allegations." *DeLoach*, 922 F.2d at 622 (internal quotations omitted).

Defendant Lytle wrote in his affidavit in support of the arrest warrant that on June 26, 2006 he "met with an individual later identified as Nikkita Montoya."  Doc. 28-1, p. 1.  Defendant Lytle believed that Nikkita was "Nokia" because the two young women physically resembled each other.  Doc 28, ¶ 18.  However, as discussed in detail above, it remains an open question of fact whether Nikkita actually resembled the woman who led him to Felder and Romero's trailer. A jury could find that Nikkita's physical appearance was so distinct from Nakia Crespin's that there were "obvious reasons" to doubt that she was the one involved in the conspiracy.  *DeLoach*, 922 F.2d at 622.  A jury could then "infer reckless disregard" on the part of Defendant Lytle, thereby finding his actions amounted to malice in this malicious prosecution case.  *See id.*  Plaintiff has thus potentially established the fourth element of her malicious prosecution claim.

Finally, Plaintiff has established that she suffered damages as a result of Defendant Lytle's acts, thereby meeting the fifth and final malicious prosecution element.  Specifically, Plaintiff

alleges to have suffered damages when she was arrested and incarcerated pursuant to the arrest warrant that issued from Defendant Lytle's affidavit. She also "suffered severe emotional shock and mental distress" as a result of her arrest and incarceration. Doc. 1, ¶ 28.

Plaintiff has thus properly alleged facts to substantiate all five elements of her § 1983 malicious prosecution claim against Defendant Lytle. She has provided sufficient evidence for this Court to find there are genuine issues of material fact remaining in this case. Since there are genuine issues of material fact, Defendant Lytle is not entitled to summary judgement as a matter of law.

## Conclusion

Pursuant to the foregoing, the motion for summary judgment will be DENIED. Plaintiffs' 42 U.S.C. § 1983 claim will not be dismissed.

## **O R D E R**

For the above stated reasons, the Court hereby DENIES Defendant Lytle's motion for summary judgment (Doc. 28).

Dated this 5th day of January, 2011.

*[signature: Bruce D. Black]*

BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE